FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 04, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEBRA K. DAY,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:17-CV-00178-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Debra K. Day, Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) on August 27, 2013, and for Title XVI Supplemental Security Income benefits (SSI) on September 13, 2011. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on December 17, 2015, before Administrative Law Judge (ALJ) Jesse Shumway. Plaintiff testified at the hearing, as did Medical Expert (ME) Lynn Jahnke, M.D., ME Thomas McKnight, Ph.D., and Vocational Expert (VE) Sharon Welter. On January 26, 2016, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a General Equivalency Diploma (GED) and an Associate Degree from Spokane Community College. She has past relevant work experience as a cleaner and a housekeeper. She alleges disability since January 21, 2012, on which date she was 47 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) improperly assessing the medical opinion evidence; and 2) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations.

## DISCUSSION
### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medically determinable impairments which include chronic obstructive pulmonary disorder (COPD), dysthymic disorder, panic anxiety disorder, pain disorder, and a borderline personality disorder;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform light work, defined in 20 C.F.R. §§404.1567(b) and 416.967(b), except that she cannot climb ladders, ropes or scaffolds, and can only occasionally engage in all other postural activities; she cannot have concentrated exposure to pulmonary irritants or vibration, and can have no exposure to hazards, such as unprotected heights or moving mechanical parts. Furthermore, she is limited to semiskilled tasks up to Specific Vocational Preparation (SVP) 4[1] and can have only superficial contact with the public;

4) Plaintiff's RFC allows her to perform her past relevant work as a cleaner and a housekeeper and alternatively, allows her to perform other jobs existing in significant numbers in the national economy as testified to by the VE, including sorter, marker and cafeteria attendant.

Accordingly, the ALJ concluded that Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion

---

[1] An SVP of 4 requires over three months up to and including six months of preparation. *Dictionary of Occupational Titles* (Rev. 4th ed.)(U.S. Dept. of Labor, 1991). See also https://www.onetonline.org/help/online/svp.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ assigned "great weight" to the opinion of Dr. McKnight because he "had the opportunity to review the entire longitudinal medical record, noted specific exhibits in [his] testimony, gave thorough explanations, [is an] expert[] within [his] specific field, and [has] program expertise." (AR at p. 30). In his hearing testimony, Dr. McKnight noted that in medical records from Community Health Associates of Spokane (CHAS) and from Rockwood Pulmonary and Critical Care dating from 2012 to 2014, there was no observation of psychological issues, no observation of unusual anxiety or depression, and instances in which Plaintiff denied anxiety and depression. (AR at pp. 100-102; 478-79, 483-84; 573 and 581).[2] Dr. McKnight opined that

---

[2] It appears Plaintiff was seen at CHAS and Rockwood primarily for physical problems. It is noted that Plaintiff does not challenge the physical RFC finding made by the ALJ. It appears Plaintiff's mental health issues were specifically the focus of her visits to Frontier Behavioral Health.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

Plaintiff "is an individual who is presenting significant pathology when she sees mental health people." (AR at p. 106).

Dr. McKnight also noted that when John Arnold, Ph.D., examined the Plaintiff in January 2010, he administered the MMPI-2-RF (Minnesota Multiphasic Personality Inventory-2-Restructured Form) to her and her profile was deemed invalid because her scaled scores were elevated beyond the level of interpretation, suggesting "she was over-reporting severe psychological, cognitive and somatic dysfunction." (AR at p. 653). Dr. McKnight found it "interesting" that in the evaluation form completed by Dr. Arnold, he did not even make a notation to "rule out malingering." (AR at p. 102). According to Dr. McKnight, Dr. Arnold "bypassed a piece of his own data and concluded that [Plaintiff] has panic disorder without agoraphobia, but there's no indication he's ever seen this in his contact with her." (AR at p. 102). Dr. McKnight added:

> I'm not suggesting she's inherently malingering, but it's appropriate to make a notation to at least rule it out. So, he has to rule it out and give a reason for it or he has to reference a notation that it needs to be ruled out in those circumstances.

(AR at p. 103).

Dr. McKnight also discussed the December 2010 psychological evaluation performed by Kayleen Islam-Zwart, Ph.D.. While Plaintiff "appeared to put forth adequate effort during the interview," Dr. Islam-Zwart noted that Plaintiff's Personality Assessment Inventory (PAI) and Fifteen Item Memory Test (FIT) results "were indicative of malingering" and "should be interpreted with caution." (AR at p. 670). With regard to the Fifteen Item Memory Test, Dr. Islam-Zwart wrote that Plaintiff's "performance was indicative of malingering of memory problems, but could also have been a function of poor effort on the task or difficulty with focus." (AR at p. 670). With regard to the PAI, Dr. Islam-Zwart wrote:

> [Plaintiff's] responses on the PAI reflect defensiveness

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 7**

> about personal shortcomings and an exaggeration of specific problems. There are indications she consistently endorsed items to portray herself in an especially negative or pathological manner, possibly associated with malingering. Thus, given the potential for considerable distortion, results cannot be interpreted further.

(AR at p. 671). According to the doctor, while there were indications Plaintiff was malingering, she "also appear[ed] to exhibit psychological symptoms that have the potential to interfere with her ability to work." (AR at p. 671).

Unlike Dr. Arnold, Dr. Islam-Zwart included a diagnosis of "Rule Out Malingering," in addition to diagnoses of Posttraumatic Stress Disorder, Major Depressive Disorder, Recurrent, Moderate, and Undifferentiated Somatoform Disorder. (AR at p. 674). She opined that Plaintiff had moderate (significant) limitations in a number of cognitive and social spheres. (AR at p. 675). Dr. McKnight suggested Dr. Islam-Zwart's opinion regarding Plaintiff's limitations was not consistent with her testing that showed potential malingering. (AR at pp. 105-06).

In addition to seeing Plaintiff in February 2010, Dr. Arnold examined the Plaintiff in December 2010, May 2011 and November 2015, although it appears he never conducted any further testing akin to the MMPI-2-RF. In May 2011, Plaintiff informed the doctor she had a substance abuse problem and needed help. (AR at p. 681). The record reflects that in October 2011, Plaintiff successfully completed drug treatment. (AR at p. 687). In November 2015, Dr. Arnold diagnosed the Plaintiff with "Unspecified Mood Disorder R/O Cyclothymia" and "Unspecified Personality Disorder w/ Borderline & Schizotypal Features." (AR at p. 773). Dr. McKnight testified that cyclothymia is a less severe form of bipolar disorder. (AR at p. 107). Dr. Arnold opined that Plaintiff had a number of moderate and marked limitations in her abilities to perform basic work activities and that the overall severity based on the combined impact of all of Plaintiff's diagnosed mental impairments was "marked" meaning "very significant." (AR at p. 774).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8**

Dr. McKnight testified he had issues with Dr. Arnold's opinion because while he indicated Plaintiff had a marked deficit to understand and follow detailed instructions, he also noted that Plaintiff was able to complete serial 3 subtraction and spell "table" forwards and backwards. (AR at pp. 106-07). And while she was able to recall only 1 of 3 objects after a five minute delay, she was also able to recall the last five presidents and therefore, according to Dr. McKnight, it was a "sketchy" mental status examination conducted by Dr. Arnold. (AR at p. 107). Furthermore, according to Dr. McKnight, while Dr. Arnold's diagnoses suggested Plaintiff might be experiencing some delusional thinking or hallucinations, he did not report observing any delusional thinking or note any hallucination she was having. (AR at p. 107).

Asked by the ALJ whether all of the mental health diagnoses in the record were supported, Dr. McKnight responded as follows:

> They're certainly not and given that we only see these issues when she's seeing mental health people. When she sees non-mental health people, the persistent notation is that she's alert, she's oriented, she's not depressed. There's no evidence of anxiety or there's not even a scanned reference to psychological issues in these multiple visits. I would expect to see some dynamic presentation in 30 to 40 visits to a medical office.

(AR at p. 108).

While Dr. McKnight agreed there was evidence of a medically determinable psychological impairment, he opined that there was essentially no restriction on her activities of daily living, mild limitations regarding social functioning and maintaining concentration, persistence and pace, and she had experienced no discrete episode of decompensation. (AR at p. 109). He thought Plaintiff to be capable of working in a job environment involving repetitive activity, although she should probably not be working in a "customer service environment." (AR at p. 109). Dr. McKnight thought it a "fair" assessment that Plaintiff "was limited to semi-skilled tasks and only superficial contact with the public." (AR at p. 109).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9**

On cross-examination, Plaintiff's counsel asked Dr. McKnight about the records from Frontier Behavioral Health for the period from January 2014 through November 2015. A debate ensued between them as to whether symptoms of anxiety and depression were observed by staff or whether Plaintiff had merely reported such symptoms. (AR at p. 110-11). Having reviewed these records (AR at pp. 689-770), the court tends to agree that Plaintiff reported symptoms of anxiety and depression as opposed to the therapists observing such symptoms. This is borne out by mental status exams which appear to be consistently normal and which indicate specifically with regard to anxiety and depression that it was for the most part, either "minimal," "improved" or otherwise "stable" and "managed" by medication. (AR at pp. 691-92; 696-97; 701-02; 707-08; 714-15; 719-20; 724-25; 728-29; 733-34; 740-41; 746-47; 757-59; 762-63). The last entry from November 23, 2015 had the Plaintiff reporting her depression being a 2 on a scale of 1 to 10, and her anxiety being a 6. (AR at p. 690). With regard to "Mood," the mental status examination reported: "Patient has a depressive mood. Patient has a (sic) anxious mood. Comments: minimal w/ all issues involved." (AR at p. 692).

Dr. McKnight's opinion serves as substantial evidence in support of the ALJ's mental RFC determination. It is supported by other evidence in the record and consistent with that other evidence as discussed above. It is also consistent with the valid reasons provided by the ALJ for discounting of Plaintiff's symptom testimony, discussed below. The bases for Dr. McKnight's opinion constituted "specific and legitimate" reasons for discounting the opinions of Drs. Arnold and Islam-Zwart regarding Plaintiff's mental RFC.

**SYMPTOMS AND LIMITATIONS TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id.* Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found Plaintiff's credibility "undermined . . . by the repeated observations of signs of malingering found throughout the record." (AR at p. 30). It is not clear from this that the ALJ made a finding of malingering based on affirmative evidence in the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Therefore, he was required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony and he did so. One of those clear and convincing reasons was, as discussed above, the suggestion by not one, but two of Plaintiff's examining psychologists, that there might be malingering on Plaintiff's part which led her to exaggerate her symptoms. (AR at p. 30).

The second clear and convincing reason offered by the ALJ, as discussed above and which is supported by the record, is that the objective medical evidence is inconsistent with Plaintiff's allegations of disability. As pointed out by the ALJ:

> [T]he claimant was consistently found to be fully oriented throughout the record [citations omitted]. Even when her mood was anxious and depressed, she presented with no other abnormalities [citations omitted]. For example, her thought processes were logical, her thought content was unremarkable, her attitude was cooperative and her affect was appropriate [citations omitted]. Furthermore, a February 2012 medical visit indicated the claimant's medication was resulting in good effect and she reportedly had no side effects [citation omitted]. Additionally, although the claimant reported moderate depression in December 2013 after a neighbor committed suicide, she still reported that her condition was manageable [citation omitted]. She even consented to a decrease in medication [citation omitted].

(AR at p. 29).

Finally, the ALJ noted that Plaintiff engaged in what the ALJ described as "high-functioning, independent activities of daily living." (AR at p. 30). The ALJ concluded that Plaintiff "has a mild restriction in activities of daily living in light of her ability to live alone, cook, clean, and shop." (AR at p. 26). This conclusion is supported by substantial evidence in the record as cited by the ALJ. (AR at p. 26). This is another "clear and convincing" reason to discount any assertion that Plaintiff's mental RFC is less than that found by the ALJ.

## CONCLUSION

ALJ Shumway rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports the decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**. The

//
//
//
//

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record. The file shall be **CLOSED**.

**DATED** this ___4th___ day of May, 2018.

*s/ Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 13**